[Crim. No. 1848. In Bank.—December 18, 1914.]

## THE PEOPLE, Respondent, v. BURR L. HARRIS, Appellant.

CRIMINAL LAW—MURDER—DEFENSE OF INSANITY—MENTAL CONDITION OF DEFENDANT'S RELATIVES MATERIAL—RULES OF EVIDENCE NOT TO BE RELAXED.—In a prosecution for murder, where the sole defense is insanity, the mental condition of any of the relatives of the defendant is material, and on that subject, as on all inquiries relating to insanity, a reasonable latitude should be allowed, but this does not mean that the rules as to the admissibility of evidence should be relaxed.

ID.—EVIDENCE—OPINIONS—QUALIFICATION OF WITNESSES—PRELIMINARY FOUNDATION MUST BE LAID.—Before the opinions of witnesses as to the sanity of a person or a particular phase of it can be given, it must be preliminarily shown that the witness is qualified to express them; and in a prosecution for murder, where defendant introduced testimony which it was claimed had a tendency to show that his maternal uncle had at one period of his life become temporarily insane and that in the infancy of defendant his father had on one occasion fallen to the floor at home and frothed at the mouth, it was not error to sustain an objection that no foundation had been laid to a question asked defendant's mother as to what phase of

insanity the uncle was afflicted with at that time, and to a question asked of a physician who knew the uncle whether it appeared to him that the latter was possessed of an insane delusion, where it was not preliminarily shown that the witnesses were qualified to express their opinions upon the subject.

ID.—QUESTION AS TO DRUNKENESS OR INSANITY OF DEFENDANT—WHEN FOUNDATION NOT LAID FOR OPINION.—It was not error in such a case to refuse to allow the mother of the defendant to express her opinion as to whether on one occasion in their early married life when the father of the defendant fell down and frothed at the mouth after returning home in an intoxicated condition, this resulted from the drunken spell or was not from the cause of drink, where not only there was no showing that she was qualified to give her opinion on the subject, but it further appeared that she testified she did not know what led up to that condition.

ID.—CIRCUMSTANCES OF DEFENDANT'S BIRTH—CONDITION OF MOTHER—WHEN EXCLUSION OF PREJUDICIAL.—While, in such a case, the mother of the defendant might have been permitted to testify, without infringing the rights of the prosecution, whether, while defendant was *en ventre se mere*, she suffered inconvenience or pain, and whether at the birth of defendant a physician had not difficulty in causing him to breathe, the exclusion of such testimony was not so prejudicial to defendant as to warrant a reversal, where the mother testified fully regarding the circumstances attending the birth of the defendant, her long period of labor and necessarily resulting pains and the use of instruments to effect her delivery, and further as to the health, conduct, habits, peculiar temperament and physical and mental defects in infancy and manhood of the defendant as she observed him.

ID.—INVENTIONS OF DEFENDANT—SYSTEMATIC DEFECT IS NO EVIDENCE OF INSANITY.—In such a case, where there was testimony, that defendant was employed a great deal of his time in attempting to perfect certain inventions, there was no error in excluding evidence of what these inventions were, offered with a view of introducing them in evidence, for the purpose of showing that a systematic defect ran through all of them, and that as an invention is a creation of the mind this would tend to show a corresponding defect in defendant's mind, as such evidence would have no tendency to show insanity.

ID.—MOTIVE OF DEFENDANT—KILLING TO OBTAIN MONEY—WHEN EXCLUSION OF EVIDENCE OF OPPORTUNITY TO GET MONEY NOT PREJUDICIAL. In such a case, where the mother testified that she had given defendant money when he wanted it and had never refused to do so, and the uncle had also, and further that defendant was usually occupied and in receipt of wages, there was no error in refusing to allow the mother and uncle to testify whether at the time of the killing of the deceased the mother had money and whether defendant knew it, and also whether the uncle had ever refused to give defendant money, this testimony being offered for the purpose of

showing that defendant could have gotten money from his relatives if he had wanted it, in opposition to the theory of the prosecution that defendant killed the deceased for the purpose of getting money.

ID.—INSANITY OF DEFENDANT—ACTS AND DECLARATIONS ADMISSIBLE.— When insanity of an accused is interposed as a defense, his acts and conduct and declarations made a reasonable time before and after the alleged criminal act is committed may be given to the jury on the question of his insanity at the time the criminal act was committed, if they appear to have any tendency to show his mental condition at that time.

ID.—CONVERSATIONS BEARING ON DEFENDANT'S INSANITY—NATURE OF MUST BE SHOWN TO ASSIGN ERROR IN EXCLUDING.—Before the exclusion of evidence of a conversation with the defendant, which may or may not be pertinent on the question of defendant's insanity, can be assigned as error, it is the duty of counsel to state the nature of the statements claimed to have been made by defendant, because, unless this is done, the trial court cannot intelligently determine whether the matter sought to be elicited could have any bearing on the question of insanity or not; nor can the appellate court, in the absence of such showing, determine whether the rights of defendant have been prejudicially affected by a ruling excluding the evidence.

ID.—EVIDENCE—GOOD CHARACTER OF ACCUSED—GENERAL EVIDENCE ONLY ADMISSIBLE—RULE SAME IN INSANITY DEFENSE.—Where good character of an accused for certain traits is proper to go before a jury, it is only evidence of general good character which must be shown; and objection is properly sustained to such questions as whether the witness had "ever known him (defendant) to steal anything," or had "always known him to be truthful," or how defendant impressed the witness, "as to his honesty and truthfulness," or whether the witness observed "that he was truthful and honest." There is no difference in the rule when insanity is a defense than in other defenses in which good character may be shown.

ID.—REFUSAL FOR READING OF TESTIMONY AT END OF TRIAL—WHEN REFUSAL NOT ERRONEOUS.—There is no error, in a prosecution for murder, in the refusal of the court, on motion of defendant's counsel, to direct that the testimony given by defendant and his mother during the trial be read to the jury at the close of the case, it being claimed that much of the testimony was given in so low a tone of voice as to be inaudible to the jury, where it appears that whenever the answers were inaudible attention was called to the fact and the answers were read by the reporter or repeated by the witnesses, and further that, although the motion was made in the presence of the jury and they were told that if they desired the testimony read the court would have it done, none of the jury expressed any such desire.

ID.—INSTRUCTIONS — MALICE — DEFINITION OF — SECTION 188 AND NOT SECTION 7 OF PENAL CODE APPLICABLE TO MURDER CASE—NO ERROR

in Giving Both.—Subdivision 4 of section 7 of the Penal Code providing, "The words 'malice' and 'maliciously' import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law," does not define the malice which is essential to constitute the crime of murder, but such malice is defined by section 188 of said code as follows: "Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow-creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." There is no prejudicial error, however, in giving both definitions in a prosecution for murder.

Id.—Defense of Insanity—Rule as to.—In order that insanity may be available on a defense to a prosecution for murder, it must appear that the defendant was suffering from such a diseased and deranged condition of mental faculties as to render him incapable of distinguishing between right and wrong with reference to the particular act with which he is charged.

Id.—Irresistible Impulse—Law of State Does not Recognize.—The doctrine that under some. forms of insanity a person may know the nature of the act fully, and at the same time cannot prevent it through paralysis of the will power, which is sometimes known as uncontrollable or irresistible impulse, has no legal standing in this state and is not a legal defense to crime.

Id.—Burden of Proof—Reasonable Doubt.—The burden of proof is on the prosecution in all criminal cases to prove every fact essential to a conviction, and if after a full and fair consideration of all the evidence the jury is satisfied that there is a reasonable doubt of the guilt of the defendant they should acquit him.

Id.—Proof of Insanity—Burden of Defendant—Must Show by Preponderance of Evidence.—While the burden of proof is generally upon the prosecution in a criminal case, this is subject to the exception that when insanity is relied on as a defense the burden of proving it is upon the defendant, which he must sustain by a preponderance of evidence, and it is not proven by raising a doubt whether or not it exists.

Id.—Ability of Defendant to Deliberate—Doubt of Jury on—Instruction to Acquit on Higher Degree—When Erroneous Instruction not Prejudicial.—In a prosecution for murder, where the court, after fully and correctly instructing the jury with reference to the burden of proof, weight of evidence, and the defense of insanity, as well as to the burden of proof on the latter defense, erroneously instructed the jury, at the request of defendant, that if from the evidence of a predisposition to insanity they should entertain a reasonable doubt of the capacity of the defendant to deliberate in killing the deceased (deliberation being essential to constitute murder of the first degree) the defendant should be given the benefit

of it and acquitted of the higher degree of murder, although the latter instruction was unwarranted under the law of this state, defendant, having requested it, is not in a position to claim that the instructions were prejudicially conflicting and misleading.

ID.—DEGREES OF CRIME—DEFENSE OF INSANITY—DELIBERATION—BURDEN NOT SHIFTED TO PROSECUTION.—The fact that a defendant is accused of murder which involves degrees, and that his guilt of the higher degree can only result from proof of a deliberate intent on his part to kill, does not differentiate the rule in this state that the burden is on the defendant where the facts and circumstances of the killing leave no other rational inference than that it was done with deliberate intention if he was sane, and he asserts incapacity to have entertained such intent by reason of his insanity, to sustain this defense by a preponderance of evidence.

ID.—SANITY PRESUMED—PRESUMPTION CONCLUSIVE IF NOT CONTRADICTED.—While the burden of proof placed upon the prosecution includes proof of a mind sufficiently sane to be capable of committing any crime or degree of crime involved in the offense charged, the presumption of law that all men are sane and have full mental capacity to commit any crime or degree of crime which the facts of the case establish, is the full equivalent of proof, without express or affirmative proof, and, until the contrary is shown, the prosecution, by the presumption, has proven the sanity of the defendant beyond a reasonable doubt. This presumption is conclusive in the absence of any evidence on the part of the defendant contravening it.

ID.—CONFLICTING INSTRUCTIONS—WHEN NOT PREJUDICIAL.—While generally the giving of conflicting or misleading instructions will warrant a reversal, this rule is subject to the exception that when this condition is not only invited by the defendant but its result is solely to his advantage he has no ground of complaint.

ID.—PUNISHMENT—DISCRETION OF JURY—APPROVED INSTRUCTION.—It is held that the instruction in this case with respect to the discretion vested in the jury, should they find the defendant guilty of murder of the first degree, as to whether he should be hanged or suffer life imprisonment is the same as given word for word and held not erroneous in *People* v. *Rogers*, 163 Cal. 476.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Frank R. Willis, Judge.

The facts are stated in the opinion of the court.

E. Burton Ceruti, for Appellant.

U. S. Webb, Attorney-General, and George Beebe, Deputy Attorney-General, for Respondent.

LORIGAN, J.—Defendant was tried for the crime of murder, convicted of murder of the first degree and sentenced to death. He appeals from the judgment and an order denying his motion for a new trial.

Upon the trial the homicide by defendant was admitted. The sole defense was insanity. As there was no dispute on the trial respecting the circumstances attending the killing of deceased by defendant and no question is raised on this appeal as to the sufficiency of the evidence to sustain the finding of the jury (necessarily implied from their verdict) against the defense of insanity interposed by defendant or the verdict returned against him a general statement of these matters need only be made.

The victim was a Mrs. Rebecca P. Gay, a Christian Science practitioner having her office in the H. W. Hellman building in the city of Los Angeles. Defendant visited her office on the afternoon of September 26, 1913. He was not acquainted with her nor had he ever seen her before. He told her that he was seeking a Mrs. Wallace whom he expected to meet at the office. He was told by Mrs. Gay that she knew no one by that name nor expected a visit from such a party. Defendant, however, insisted that this Mrs. Wallace would call there and was permitted to sit in the reception room of the office and wait her expected arrival. He waited there about an hour—until nearly 5 o'clock—when a patient whom Mrs. Gay had been attending in the inner office departed, leaving defendant and Mrs. Gay alone in the reception room. That was the last seen of the latter alive. Next morning her dead body was by a janitress of the building found lying in the office. Letters and papers were scattered over her body. A handbag and purse in which Mrs. Gay carried her money was found in the office, the latter empty. An autopsy showed —to state it briefly—that Mrs. Gay had been killed by repeated blows from some blunt instrument on her face and head which had fractured the skull in numerous places. Defendant was suspected of the homicide and arrested in the city of San Diego on·October 5, 1913, and confessed that he had done the killing. He also testified as a witness on the trial and detailed the circumstances of Mrs. Gay's death at his hands. He testified that for some three years previous to the homicide he had at occasional times suffered from fits resulting in a loss of consciousness; that at those times cover-

ing a period of from days to several weeks he would have
spells of sickness accompanied by lapses of memory; that
sometimes also during these spells he would hear voices of
unknown and unseen persons telling him that he was threat-
ened with great injury or death by some person and urging
him to seek and kill such person to protect himself and the
voices kept constantly urging him to do the things they said;
that he was made angry and fearful at these times by these
suggestions and promptings; that a feeling or impulse to do
as the voices urged would come over him which he would try
to resist but which he could not succeed in doing; that for
a week previous to his killing of Mrs. Gay he was suffering
under one of these spells during which the voices kept con-
stantly telling him that a Mrs. Wallace (a person he did not
know) intended to kill him and that he must seek and kill
her; that he would find her somewhere in the Hellman build-
ing; that when he called at Mrs. Gay's office he thought he
would find this Mrs. Wallace there or that she would come in
during that afternoon; that after he had been sitting in the
reception room for about half an hour he heard these voices
again and they kept telling him that Mrs. Gay was this Mrs.
Wallace he was seeking and that he must kill her; that when
a patient on whom Mrs. Gay was attending left the office he
and Mrs. Gay were alone; that immediately the telephone in
the office rang and as Mrs. Gay was seated at the desk answer-
ing it he approached and struck her on the head with a piece
of iron pipe which he had brought with him wrapped in news-
paper and with which the voices had directed him to kill Mrs.
Wallace; that when struck Mrs. Gay fell to the floor and as
she lay there he struck her again with the iron pipe about
the head four or five violent blows. Satisfied that she was
dead he looked through her desk and scattered the papers
therefrom on the floor; that while so engaged, hearing some
one approaching toward the outer door of the office he sprung
the inner lock of it to prevent entrance. He took the contents
of Mrs. Gay's purse—amounting to twenty-five dollars—
and left the office, departing from the Hellman building by
the back stairs. He left the piece of gas pipe used in killing
the deceased by the side of her body. That night he buried
the clothes he wore at the time he killed the deceased, which
were spattered with blood, in a field near the residence of his
mother where he was living. The next day he departed on

an early train for San Diego. At the time of his confession and on the trial he claimed that he had no remembrance of killing deceased until after his arrest by the officers when they told him of his visit to the office of Mrs. Gay, the apparent circumstances under which she was killed, the wounds inflicted, and the weapon found beside her body; that he then for the first time remembered that he had done the killing and recalled all the circumstances under which it was done.

As to the defense of insanity. It was not claimed that appellant was insane at the time of the trial but only that he was insane when he committed the homicide. Testimony on this subject was presented to the jury quite fully on both sides. The claim on behalf of the appellant was that he was subject to intermittent attacks of a particular phase of epileptic insanity defined by the medical experts called in his behalf as psychic epileptic equivalent, a condition where instead of the usual convulsive phenomena ordinarily known as epileptic fits there are substituted from time to time certain disturbances of mentality during which the consciousness of the individual afflicted is so altered that he is deprived of the full possession of his usual faculties; he acts in a manner wholly foreign to his usual conduct, habits, and mode of thought and thinks things are true that are not and acts upon them because he believes they are true; that a characteristic of this phase of insanity is that while suffering under it the individual may become dominated with an idea entirely imaginary that he is being persecuted or threatened with injury from some source and will make a sudden and violent attack on some person his diseased mind suggests is the one persecuting or intending to injure him.

These medical experts gave it as their opinion from the evidence in the case and personal examination of the defendant that he was suffering from a spell of this phase of insanity when he killed deceased and was insane when he did so; that by reason thereof he was incapable of having a malicious intent to kill and incapable of deliberating upon the act of killing which he committed. The court permitted these experts to testify that from the nature of his insanity when defendant killed the deceased he was incapable of resisting an impulse to do it, but the court at the same time stated that nevertheless it would instruct the jury that in this state the doctrine

of irresistible impulse as an excuse for crime did not exist,
and did subsequently so instruct the jury.

On the part of the prosecution the opinion of medical
experts based also on the evidence in the case and personal
examination of the defendant was that he was not suffering
from epileptic insanity when he killed the deceased; that he
was entirely sane at the time, having mental capacity to know
and understand the nature and character of the act he was
committing.

As we have said the appellant raises no question but that
the evidence was sufficient to sustain the finding of the jury
that he was sane or to sustain the verdict of murder of the
first degree.    His claim on this appeal is only that certain
rulings of the court prejudicially prevented him from fully
presenting to the jury all the testimony which he was entitled
to present for their consideration on the issue of insanity; that
the court also erred in other of its rulings and in the matter
of the instructions given by it to the jury.

As to the rulings on the admission of testimony.    Many
errors on that ground are assigned by appellant but we deem
it necessary only to consider some of them.    The assignments
as to the others are clearly without merit.

In the course of the trial defendant introduced testimony
which it was claimed had a tendency to show that his maternal
uncle had at one period of his life become temporarily insane
and that in the infancy of the defendant his father had on
one occasion fallen to the floor at home and frothed at the
mouth.    The mother of the defendant was asked by counsel
for appellant what phase of insanity the uncle was afflicted
with at that time and a Dr. Nelson, a physician who knew the
uncle, was asked whether it appeared to him that the latter was
possessed of an insane delusion.    These questions were ob-
jected to and the objection sustained on the ground that no
foundation for the inquiries had been laid.    Undoubtedly,
where insanity is a defense the mental condition of any of
the relatives of the defendant is material and on that subject
as on all inquiries relating to insanity a reasonable latitude
should be allowed.    But this does not mean that the rules as
to the admissibility of evidence should be relaxed.    The rule
is that before the opinion of witnesses as to sanity of a person
or a particular phase of it can be given—and the inquiries
here were simply calling for the opinion of the witnesses on

that subject—it must be preliminarily shown that the witness is qualified to express it and clearly this was not shown here.

Nor can error be predicated on the ruling of the court refusing to allow the mother of the defendant to express her opinion as to whether on one occasion in their early married life when the father of the defendant fell down and frothed at the mouth after returning home in an intoxicated condition (referred to above) this resulted from the drunken spell or was not from the cause of drink. Not only was there no showing that she was qualified to give her opinion on the subject, but it further appears that she testified that she did not know what led up to that condition.

The mother of the defendant was not permitted to answer whether while he was *en ventre se mere* she suffered inconvenience or pain and whether at the birth of the defendant a physician had not difficulty in causing him to breathe. Without any infringement on the rights of the prosecution the court might have let this testimony in. But as it is not suggested how this circumstance could have been important, particularly in view of the fact that the mother testified fully regarding the circumstances attending the birth of defendant, her long period of labor and necessarily resulting pains and the use of instruments to effect her delivery, and further as to the health, conduct, habits, peculiar temperament, and physical and mental defects in infancy and manhood of the defendant as she observed him, we cannot say that this particular ruling worked such prejudice to the rights of the defendant as would make a sufficient showing to warrant a reversal. There was testimony tending to show that the defendant was employed a great deal of his time in attempting to perfect certain inventions and it was sought to show what these inventions were with a view to having them—some half dozen or more—introduced in evidence. The testimony respecting their character and the right to offer them was rejected by the court. Counsel for appellant claims this was error; that if he had been permitted to introduce the inventions it would have shown that a systematic defect ran through all of them; that as an invention is a creation of the mind if it be shown that the same defect is found in each of them, this would have a tendency to show that there was a corresponding defect in the mind of defendant. But this evidence would have no tendency to show insanity unless as a rule it may be

said—which of course it cannot—that unsuccessful inventors are in a measure insane. These prevailing defects would only show that the appellant was not successful in perfecting the idea contemplated in his inventions. They would have no tendency to show he was insane.

The mother of the defendant and also his uncle Lafayette Taylor were not allowed to answer whether at the time of the killing of Mrs. Gay the mother had money and whether defendant knew it, and the uncle whether he had ever refused to give the defendant money. Counsel for appellant insists that he had a right to show that the defendant could have gotten money from his relatives if he had wanted it in opposition to the theory of the prosecution that the defendant killed Mrs. Gay for the purpose of getting money. But as the testimony of the mother in the case was that she had given the defendant money when he wanted it and had never refused to do so and that the uncle had also given it to him, and further that defendant was usually occupied and in the receipt of wages, there was no unreasonable curtailment of the right of defendant in sustaining the objections to these particular inquiries.

The court refused to allow the mother to state a conversation which she had with the defendant at supper time the evening of the homicide; or to permit her to answer whether she had "ever known him to steal anything"; or had she "always known him to be truthful"; or to permit another witness from his association with appellant to answer how the defendant impressed him "as to his honesty and truthfulness," and whether he observed "that he was truthful and honest." As to the inquiry of the mother concerning any conversation with the defendant, she testified that she had a conversation with him and was asked "What was it?" It is the rule as claimed by appellant that when the insanity of an accused is interposed as a defense, his acts and conduct and declarations made a reasonable time before and after the alleged criminal act is committed may be given to the jury on the question of his insanity at the time the criminal act was committed if they appear to have any tendency to show his mental condition at that time. (*People* v. *Willard,* 150 Cal. 544, [89 Pac. 124].) But here the question proposed did not indicate in the slightest that the conversation sought to be elicited would have any such tendency. Before the exclusion

of a conversation which may or may not be pertinent on the question of insanity can be assigned as error it is the duty of counsel to state the nature of the statements claimed to have been made by defendant because unless this is done the trial court cannot intelligently determine whether the matter sought to be elicited could have any bearing on the question of insanity or not. Nor can this court in the absence of such showing determine whether the right of the defendant had been prejudicially affected by the ruling of the court. All conversations are not admissible but only those which have a tendency to prove the insanity of the accused. Counsel in this case if he deemed the matter of sufficient importance should have made a formal statement or offer of what he intended to prove. Such a proceeding is in harmony with the rule governing appeals: that error warranting a reversal must affirmatively appear in the record and to also permit this court to determine whether a substantial right of a defendant has been prejudiced by a ruling assigned. (*People* v. *Brotherton,* 47 Cal. 388; *People* v. *Brent,* 11 Cal. App. 674, [106 Pac. 110].) As to the inquiry directed to the truthfulness and honesty of the defendant. What was sought was only the individual opinion of the witnesses respecting these traits of character of the defendant from observation or association with him. But such evidence is not admissible. The rule is that where good character of an accused for certain traits is proper to go before a jury, it is only evidence of general good character which must be shown. There is no difference in the rule when insanity is a defense than of other defenses in which good character may be shown.

Error is assigned in the refusal of the court on the motion of counsel for appellant to direct that the testimony given by the defendant and his mother during the trial be read to the jury at the close of the case. The claim of counsel was that much of their testimony was given by these witnesses in so low a tone of voice as to be inaudible to the jury. It is true, as it is not unusual during trials, that these witnesses sometimes answered questions in such a low tone of voice that some of the jury, the court and counsel requested them to speak louder. But the record shows that whenever their answers were inaudible this was called to their attention by either court or counsel and their answers either read by the reporter or repeated by the witnesses. This motion was made in the pres-

ence of the jury and they were told that if they desired the testimony of these witnesses read the court would have it done; that if they were satisfied that they had heard it no purpose could be subserved by reading it again. None of the jury expressed any desire to hear it re-read and it must be assumed that they heard it all and did not need to have any part of it re-read to them.

As to the instructions complained of. The court in its instructions on "malice," which is an element of the crime of murder, gave the general definition of that word as found in subdivision 4 of section 7 of the Penal Code. Appellant claims that the giving of this definition of malice in a case where the crime charged is murder was erroneous. It is true that the malice defined in that section of the code is not the malice which is essential to constitute the crime of murder. The malice essential to constitute it is something distinct from the malice defined by the section referred to and is particularly defined by section 188 of the Penal Code, a definition which was also given by the court. Prejudicial error however did not follow because both definitions were given. In giving the definition from section 7 the court only gave the general import of the word malice. When it came to defining the crime of murder with its essential elements, it correctly defined the malice constituting one of such elements as it is particularly defined in section 188. Under similar circumstances it is held that the giving of the general definition where the special definition as found in section 188 is also given is no ground of substantial complaint. (*People* v. *Dice,* 120 Cal. 201, [52 Pac. 477].)

The principal contention however of appellant with reference to the instructions is that in its charge to the jury the court gave contradictory, confusing, and misleading instructions with reference to the defense of insanity, the burden of proof, and weight of evidence and sets out in his brief the particular instructions which he asserts present this condition. He does not discuss particularly the instructions which he claims present it. He simply sets forth a number of them, makes the point and cites authorities which he claims sustain his contentions.

The court gave full and clear instructions on the defense of insanity; announcing the well established rule that in order to be available for that purpose it must appear that the defend-

ant was suffering from such a diseased and deranged condition of his mental faculties as to render him incapable of distinguishing between right and wrong with reference to the particular act with which he was charged. It also instructed as to partial insanity and further told the jury that the doctrine that under some forms of insanity a person may know the nature of the act fully and at the same time cannot prevent it through paralysis of the will power and which is sometimes known as uncontrollable or irresistible impulse has no legal standing in this state and is not a legal defense to crime.

It further gave the instruction common to all criminal cases; that the burden of proof was on the prosecution to prove every fact essential to a conviction; defined reasonable doubt and gave the usual instruction in connection therewith that if after a full and fair consideration of all the evidence the jury were satisfied there was such reasonable doubt of the guilt of the defendant they should acquit him. As to the burden of proof it charged further that while such burden was generally upon the prosecution this was subject to the exception that when insanity is relied on as a defense to crime the burden of proving his insanity was upon the defendant and he must show by a preponderance of the evidence the existence of such insanity; that it was not proven by raising a doubt whether it existed or not. The legal accuracy of these instructions as announcing correct principles of law for consideration by the jury as to all the matters to which they related is not questioned by the appellant.

But in addition to these instructions the court at the request of the appellant gave the following instruction to the jury: "It is logical to hold that where the accused is charged with deliberate homicide and offers evidence to show that the condition of his mind through predisposition was such that he was incapable of deliberation, the reasonable doubt as to such capacity for deliberation should be resolved in favor of the accused to the extent that it acquits him of the higher grade and convicts him of the lower grade of the offense." The "predisposition" referred to in the instruction doubtless was a predisposition to insanity.

It is this quoted instruction considered in connection with the general instructions just referred to which counsel for appellant contends created the condition of contradictory, confusing, and misleading rules given to the jury respecting the

subject of insanity, the burden of proof, and the weight and sufficiency of the evidence. There is an apparent condition, of conflict in these instructions though what its effect is as far as being prejudicial to the appellant is a matter for subsequent consideration. While the court in its main charge correctly instructed the jury that the rule in this state is that the defense of insanity when interposed by a defendant must be made out by a preponderance of the evidence on his part (*People* v. *Myers,* 20 Cal. 518; *People* v. *Alexander,* 117 Cal. 83, [48 Pac. 1014] ; *People* v. *Suesser,* 142 Cal. 354, [75 Pac. 1093] ; *People* v. *Wells,* 143 Cal. 138, [78 Pac. 470]) in this quoted instruction it nevertheless informed them that if from the evidence introduced of a predisposition to insanity they should entertain a reasonable doubt of the capacity of the defendant to deliberate in killing the deceased (deliberation being essential to constitute murder of the first degree) the defendant should be given the benefit of it and acquitted of that higher degree of murder. There is no warrant in the law of this state for any such doctrine as declared in the quoted instruction. Counsel for appellant defends it as properly applicable to the degrees of murder on the theory that while a charge of murder is established by proof simply of the killing by defendant, that such a showing constitutes only murder of the second degree; that in order to constitute murder of the first degree it is incumbent on the prosecution to prove something more than the killing itself,—namely that the killing was committed with a deliberate intention to kill; that this deliberate purpose to kill is an essential fact necessary to be proven to constitute murder of the first degree and the burden of proving it beyond a reasonable doubt is on the prosecution; that if a reasonable doubt of such deliberate purpose arises from the evidence whether produced from the evidence on the issue of insanity or otherwise, the accused is entitled to the benefit of it and to an acquittal of the higher offense. All that counsel contends for as to the degrees of murder the necessity of proving deliberation to constitute murder of the first degree and as to the burden of proof being on the prosecution is undoubtedly true. But the fact that the defendant is accused of murder which involves degrees, and that his guilt of the higher degree can only result from proof of a deliberate intent on his part to kill, does not differentiate the rule in this state that the burden is on the defendant

where the facts and circumstances of the killing leave no other rational inference than that it was done with deliberate intention if he was sane, and he asserts incapacity to have entertained such intent by reason of his insanity, to sustain this defense by a preponderance of the evidence. The burden of proof is always on the prosecution to prove all the elements necessary to constitute the guilt of the defendant and this involves proof of a mind sufficiently sane to be capable of committing crime or any degree of crime involved in the offense charged. But the law presumes all men are sane; not some degree of sanity but that they have full mental capacity to commit any crime or degree of crime which the facts in the case establish. Express or affirmative proof of the sanity of a defendant is not required to be made by the prosecution. The presumption which the law raises is the full equivalent of proof of it as a fact, and, until the contrary is shown, the prosecution, by the presumption, has proven the sanity of the defendant beyond a reasonable doubt. This presumption is conclusive in the absence of any evidence on the part of the defendant contravening it. If none is introduced by him the presumption prevails, and the burden on the prosecution of proving beyond a reasonable doubt the capacity of the defendant to commit the crime charged which the facts and circumstances otherwise show beyond such doubt was committed by him, is sustained. The rule prevailing in this state, and in the majority of jurisdictions elsewhere, requiring the defendant where insanity is interposed as a defense by him to prove it by a preponderance of the evidence does not affect the rule that the burden of proving sanity is on the prosecution. That burden is always on it and it is met in the first instance by the presumption which the law raises of sanity and which must prevail until it is overcome. The rule casting upon the defendant the burden of establishing his insanity by a preponderance of the evidence does not shift this burden of proof from the prosecution to him but only shifts the burden of introducing evidence and declares the amount or *quantum* of evidence which he must produce to overthrow the presumption and show his insanity. Now in this case the claim of the prosecution was that the defendant was guilty of murder of the first degree from the facts and circumstances shown of the killing. There was no dispute as to the facts and circumstances under which the killing of deceased by defendant

was done. They were conceded and show that the killing was committed by defendant under circumstances of peculiar atrocity and in a manner which could leave no rational inference but that it was done with deliberate purpose and intent to kill if the defendant was sane. Unless he was insane no other verdict than that of murder of the first degree could have been returned against him. His sole defense was that he was insane to a degree that he was incapable of entertaining the deliberate intent essential to constitute first degree murder. But the law presumed him sane which involved the mental capacity of entertaining the deliberate intent which the conceded facts surrounding the killing rationally showed. By reason of the presumption the jury must remain convinced of his sanity or they must be convinced by a preponderance of the evidence that he was insane. There is no middle ground or intermediate rule or any rule of reasonable doubt as to insanity recognized in this state and hence no warrant for the giving of this quoted instruction by the trial court. It had otherwise correctly instructed the jury on all matters respecting insanity as a defense and the rules under which it must be considered by the jury. As is apparent from our discussion of the subject it was not exactly correct for the court to tell the jury that there was an exception to the rule as to the burden of proof being on the prosecution where insanity is interposed as a defense, but this does not affect the matter under consideration. It may be said that in giving the usual general instructions in criminal cases as to the right of a defendant to an acquittal if the jury from a consideration of all the facts and circumstances are not satisfied that the state has established every fact essential to a conviction the court should with regard to the defense of insanity set up by a defendant specifically inform them of the qualification in such cases to this general rule,—namely, that such defense must be established to their satisfaction by a preponderance of the evidence in his favor and that the rule of reasonable doubt does not apply as to such a defense.

But while generally the giving of conflicting or misleading instructions will warrant a reversal this rule is subject to the exception that when this condition is not only invited by the defendant but that its result is solely to his advantage he has no ground of complaint. This was the situation created here. Of course no prejudice was worked the appellant through

the correct instructions given by the court. The giving of conflicting and misleading rules proceeded from the quoted instruction. But obviously the giving of this quoted instruction was decidedly to the advantage of appellant. It submitted his only defense of insanity for the consideration of the jury under the rule of reasonable doubt (to say nothing of a predisposition to insanity being any defense at all) much more favorably than he was entitled to, and hence no prejudice resulted to him nor any valid ground of complaint.

The court gave the jury an instruction with respect to the discretion vested in them should they find the defendant guilty of murder of the first degree as to whether he should be hanged or suffer life imprisonment. It is unnecessary to set forth the instruction here. It is the same instruction as was given word for word by the trial court in *People* v. *Rogers* and the correctness of which was the subject of consideration on an appeal to this court in that case. (*People* v. *Rogers,* 163 Cal. 476, [126 Pac. 143].) We held there that the giving of such an instruction was not erroneous.

It was not error for the court to deny the motion for a new trial on the ground of newly discovered evidence. There was no showing whatever of reasonable or any diligence to discover or produce at the trial the single item of evidence bearing upon the insanity of appellant which was claimed subsequently to have been discovered and which is referred to in the affidavit of the mother filed in support of defendant's motion.

The judgment and order appealed from are affirmed.

Melvin, J., Henshaw, J., Angellotti, J., and Sloss, J., concurred.

HENSHAW, J., concurring:—I concur in the foregoing opinion and judgment. The condition of our law touching instructions to the jury in the matters above discussed, I take it briefly to be this: In general, if, after their review of all of the evidence, the jury entertain a reasonable doubt of the guilt of the defendant, it is the jury's duty to give the defendant the benefit of that doubt and to acquit him. This doctrine of reasonable doubt goes not only to the whole evidence, but equally to every material issue in the case. Thus, if upon any one material issue the jury entertain such a doubt, their

verdict must be acquittal. When, however, our law says, as it does with equal positiveness, that when insanity is relied upon as a defense it must be proved to the satisfaction of the jury by a preponderance of evidence, there is presented an apparent conflict between the two doctrines. But this conflict is only apparent. When insanity is interposed as a defense, that one particular issue is removed from the operation of the rule of reasonable doubt. It forms an exception to it. Our law is this: If the jury entertain a reasonable doubt concerning the proof of any material issue in a criminal case, it must give the defendant the benefit of that doubt and acquit him, unless the particular issue be that of insanity. As to this issue a reasonable doubt is not sufficient to justify an acquittal at the hands of the jury, but they must be convinced that the defense of insanity is established by a preponderance of evidence. It would tend to clarify our criminal law if trial judges, where the occasion arises, would define this matter to the jury in some such way as that above indicated.

Shaw, J., concurred.